**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CALVIN E. MARSHALL,

     Petitioner,         Case No. 2:16-CV-12016

v.                       HONORABLE DENISE PAGE HOOD
                           CHIEF UNITED STATES DISTRICT JUDGE

THOMAS WINN,

     Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA
PAUPERIS***

Calvin E. Marshall, ("Petitioner"), confined at the Saginaw

Correctional Facility in Freeland, Michigan, filed a *pro se* petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his

conviction and sentence for six counts of assault with intent to commit

murder, M.C.L.A. 750.83.   For the reasons that follow, the petition for writ

of habeas corpus is DENIED.

## I.  Background

Petitioner was originally charged with six counts of assault with intent to commit murder, along with twelve other criminal charges arising from two other cases.  Petitioner was also charged with being a fourth felony habitual offender. [1]

On July 25, 2011, petitioner appeared in court for trial.  The trial judge indicated that the prosecutor made a plea bargain offer to petitioner that would no longer require his testimony against his co-defendants, as an earlier proposed plea bargain had required. (Tr. 7/25/11, p. 4).  The following exchange took place between the judge and petitioner:

> THE COURT: Let me tell you this right now.  How old are you?
>
> DEFENDANT MARSHALL: Nineteen.
>
> THE COURT: What's 19 plus 62?
>
> DEFENDANT MARSHALL: Seventy-nine, 72.
>
> THE COURT: It's 81, okay?  Do you want to be 81 years old when you're up for parole, all right, or would you prefer to be maybe 33? Eighty-one years or 33 years old?
>
> DEFENDANT MARSHALL: I would rather be young.
>
> THE COURT: All right.  This is the deal.  They're [the prosecutor]

---

[1]  Under M.C.L.A. 769.12(1)(a), a fourth felony habitual offender can be sentenced to up to life in prison if his or her underlying felony carries a maximum sentence of five or more years in prison.

offering I think 14 years, right?

MR. EDWARDS: [the assistant prosecutor]: That's the bottom of the guidelines, yes, your Honor.

THE COURT: Okay. The top of your guidelines are 62-and-a-half years, so take 62-and-a-half, add your 19, you would be 81. If you take their 14 [years], you would be 33 and still a young man. Now your Habitual 4, so I'm supposed to be giving you life anyhow, all right, which means that you spend the rest of your time in prison for the rest----it's parolable life but you're supposed to be getting life. Your guidelines are 750 months, all right? So you would be 81 years old by the time you were eligible to be released, and that's just guidelines. Do you understand that?

DEFENDANT MARSHALL: Yes, sir.

THE COURT: Because of civil liability and all this other stuff, they may be willing to take a no contest plea where they----we would read into the record, you know, what the basis of this is, all right, but I don't want to have you----I've got three cases. See the prosecutor behind you? She's got----she's got the other two, okay, that come right after these, and these are Habitual 4's to begin with. Your guidelines in those are 25 years on just the car cases. The AWIM [assault with intent to murder] case they're at 81----62-and-a half years, 750 months, all right. So the----I don't----I mean it's bad to make a bad decision, but it's really bad to compound that mistake, go to jury trial, get convicted and then get a----basically, you know, a sentence, you know, for the rest of your life in prison. All right. So I would----I mean obviously you can go and, you know, go to jury trial in any one of these three cases here, all right? But they have three shots at you at sending you to jail for the rest of your life, all right? Twenty-five years, 25 years----I mean 14 years is obviously a lot less than 25, even on the car cases, all right let alone the one case, Assault With Intent to Murder.

(*Id.,* pp. 5-7).

3

The judge further explained to petitioner that the courtroom deputy was getting the jury ready, but that petitioner's attorney, Ms. Braxton, had wanted the judge to make a record "because she doesn't want you to go to jury trial, get convicted and then have you say, ' Well, gee, you should have given me a plea offer,' all right?   Because if you get 62-and-a-half years on this case today that's up for trial and you're offered 14 years, you know, that's roughly, you know a difference of about 48 years.  So----and that's a big difference, and that's some people's whole lifetime is the difference she's [defense counsel] gotten you." (*Id.,* p. 7).  The judge further explained to petitioner that defense counsel had managed to obtain this plea bargain without petitioner being required to testify.  The judge again informed petitioner that he could plead and get 14 years, "and you wipe out all three cases" as well as two probation violations or he could go to trial but if convicted could receive 25 years on each of the car cases and 62-and-a-half years on the assault with intent to murder charges. (*Id.,* pp. 7-8).

Petitioner's trial counsel at this point put on the record that she was ready to go to trial and did not want petitioner to believe that she was forcing him to do anything.  Counsel, however, wanted petitioner to understand the difference between the number of years in prison that he

4

would receive by pleading versus the number of years that he could

receive by going to trial. (*Id.,* pp. 8-9).

The judge again explained the situation to petitioner.

THE COURT: Mr. Marshall, Ms. Braxton told us to go ahead and
get the jury because you wanted a jury trial.  I don't want you to
make an uninformed decision.  If you committed these offenses,
any one of them, even if you, for example, are not sure if you did
an Assault With Intent to Murder, maybe it's GBH, Great Bodily
Harm.  I don't know, all right.  But on any one of these cases, you
could be sentenced to far more than 25 years----than the 14 years
that they're offering.  On the car cases alone it's 11 more years.
So I mean unless you got 11 more years----so ask yourself, I
might beat this one, I might not beat this one, but even if I beat
this one and they get me on this one, I've got 11 more years on
a car case than if I would have gotten 14 total.  So the issue is
whether you're guilty or not guilty, whether you want to go to trial
or whether you want to resolve the case for the 14 years.  While
the deputy is getting the jury I am going to let you talk to Ms.
Braxton and make an informed decision.  I don't want to send you
to prison for 81 years----until you're 81 years old, 62-and-a-half
years, when you can resolve the case for 14, you know.  So in
that instance, that's, what, almost 48 years difference.  So unless-
---unless you have 48 years of extra time on your hands, you
might want to consider the 14 years that they're offering, all right.
You understand that?

DEFENDANT MARSHALL: Yes, sir.

(*Id.*, pp. 9-10).

The judge asked petitioner to discuss the matter with his attorney,

reminding him that his attorney was prepared for trial. (*Id.,* pp. 10-11).  The

judge again explained to petitioner that "the only way you can control that

5

outcome is through the plea bargain process" and if the case was turned

over to the jury, petitioner was looking at 62-and-a-half years. (*Id.,* pp. 11-

12).

After conferring with his attorney, the judge asked petitioner if his

attorney had reviewed his confessions and the pictures [of the victim or

crime scene] to petitioner.  Petitioner replied that counsel had reviewed this

evidence. (*Id.,* p. 12).  The judge specifically asked petitioner why he would

want to go to a jury trial in light of the confessions.  Petitioner indicated that

in spite of the confessions, he wished to go to trial.  The judge informed

petitioner that his confession would be used against him if he went to trial.

Petitioner replied no when asked if he wanted to do 750 months in prison.

Counsel indicated on the record that she had visited petitioner four to five

times in jail, had explained the sentencing guidelines and had reviewed the

evidence with him, including the photographs and his confessions.

Counsel indicated she was prepared to try the case but did not think it was

in petitioner's best interest to do so.  The judge indicated that petitioner

faced a total of 19 counts.  The judge again reiterated that the assault with

intent to murder charges all carried up to life in prison.  The prosecutor

indicated that the fourteen year minimum sentence being offered was "a

6

favorable number." (*Id.,* pp. 12-17).  The judge again explained the plea

offer to petitioner and all of the evidence against him, including his

confessions.  The judge gave petitioner five more minutes to decide. (*Id.,*

pp. 17-18).  With respect to the confession, the judge asked petitioner: "I

mean, if you admit to it, then there's really not much Ms. Braxton can do."

The judge explained that petitioner could go to trial and be acquitted, but

with a confession, that would not be likely to occur. (*Id.,* pp. 18-19).

After a brief recess, the judge indicated that they had allowed

petitioner to even make a telephone call to discuss the case with someone

other than his attorney.  The judge placed the plea offer on record. (*Id.*, pp.

20-21).

At this point, petitioner indicated he would plead no-contest to the

charges. (*Id.,* p. 21).  Petitioner was advised of the plea agreement and the

constitutional rights he would relinquish by pleading no-contest.  Petitioner

understood the rights and the agreement.  The judge indicated that the

*Cobbs* [2] or plea agreement called for petitioner to receive a minimum

sentence of 14 and a quarter years in prison.  The prosecutor would

---

[2]   *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), the Michigan Supreme Court authorized a judge to preliminarily indicate the appropriate length of sentence, but if the defendant subsequently pleads guilty and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea. See M.C.R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. App'x. 701, 703 n.1 (6th Cir. 2007).

7

dismiss the habitual offender charge and two other cases. (*Id.*, pp. 21-31).

Petitioner moved at sentencing to withdraw his plea, which the judge denied. (Tr. 8/8/11, pp. 4-7). Petitioner was sentenced to 171 months [14 years, 3 months] to 285 months in prison. (*Id.,* p. 14).

Petitioner, through appellate counsel, filed another motion to withdraw his no-contest plea, in part, because his plea had been coerced. (Tr. 2/10/12, pp. 3-4). The judge denied the motion. (*Id.,* pp. 6-9).

Petitioner's conviction was affirmed on appeal. *People v. Marshall,* No. 311536 (Mich.Ct.App. Aug. 29, 2012); *lv. den.* 493 Mich. 967, 829 N.W. 2d 235 (2013).

Petitioner filed a postconviction motion for relief from judgment, which was denied. *People v. Marshall,* No. 11-002149-01-FC (Third Cir. Ct., July 31, 2014). The Michigan appellate courts denied petitioner leave to appeal. *People v. Marshall*, No. 325833 (Mich.Ct.App. Apr. 9, 2015); *lv. Den.* 499 Mich. 881, 876 N.W.2d 537, 538 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Violation of Federal Criminal Procedure Rule 11(e)(1).

II. Right to withdraw plea.

III. Ineffective Assistance of Counsel and Appellate counsel.

8

IV.  The [Michigan] Court of Appeals violated [the] procedural rule when [it] denied Ineffective Assistance of Appellate counsel [claim.].

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal

law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court on a question of law or if the state court decides a

case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification

10

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

Petitioner raised his involuntary plea and plea withdrawal claims (contained in his first two claims) on his direct appeal. The Michigan Court of Appeals denied petitioner's application for leave to appeal on petitioner's direct appeal in a form order "for lack of merit in the grounds presented." The Michigan Supreme Court subsequently denied the petitioner leave to appeal in a standard form order without any extended discussion. Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *Harrington*, 562 U.S. at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or

11

state-law procedural principles to the contrary." *Id.* at 99.  That

presumption may be overcome only when there is a reason to think that

some other explanation for the state court's decision is more likely. *Id.* at

99-100.

In the present case, the AEDPA deferential standard of review

applies to petitioner's first and second claims where the Michigan Court of

Appeals rejected petitioner's appeal "for lack of merit in the grounds

presented" and the Michigan Supreme Court subsequently denied leave to

appeal in a standard form order, because these orders amounted to a

decision on the merits. See *Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir.

2012).

### III. Discussion

### A.  Claims # 1 and # 2.  The involuntary plea/plea withdrawal claims.

Petitioner claims that he should have been permitted to withdraw his

no-contest plea because the judge coerced the plea by threatening

petitioner with life in prison if he went to trial and was convicted.  Petitioner

further claims that the judge violated Fed. R. Crim. P. 11(e)(1), which

prohibits judicial participation in plea negotiations.

Initially, the Court observes that petitioner has no federal

12

constitutional right to withdraw his no-contest plea. *See Hynes v. Birkett,* 526 F. App'x. 515, 521 (6th Cir. 2013).  Unless a petitioner's guilty or no-contest plea otherwise violated a clearly-established constitutional right, whether to allow the withdrawal of a habeas petitioner's plea is discretionary with the state trial court. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748(E.D. Mich. 2005).

A guilty or no-contest plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004)(both citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)).  In order for a plea of guilty or no-contest to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991).

In federal criminal matters, Fed. R. Crim. P. 11(c)(1) prohibits judicial participation in plea discussions *before* a defendant decides to plead guilty or to stand trial.  Fed. R. Crim. P. 11(c)(1); *United States v. Davila,* 133 S. Ct. 2139, 2148 (2013).  Fed. R. Crim. P. 11(c)(1) was adopted as a prophylactic or preventive measure and is not compelled by the Due

13

Process Clause or any other federal constitutional requirement. *Davila*,
133 S. Ct. at 2149. A violation of Rule 11(c)(1) does not trigger automatic
reversal. *Id.* Only a limited calss of errors trigger automatic reversal, such
as denial of counsel, denial of self-representation, denial of a public trial
and failure to convey to a jury that guilt must be proved beyond a
reasonable doubt. *Id.*

Although Fed. R. Crim. P. 11(c)(1) prohibits judicial participation in
plea negotiations, it is not a federal constitutional rule; therefore, its
prohibition on judicial participation in plea bargaining in the federal courts
does not necessarily invalidate every instance of judicial participation in
the negotiation of a guilty plea in *state* courts. *Alvarez v. Straub,* 21 F.
App'x. 281, 283 (6th Cir. 2001)(*quoting Frank v. Blackburn,* 646 F. 2d 873,
880 (5th Cir. 1980)). "'[A] federal court reviewing a state court plea
bargain may only set aside a guilty plea or plea agreement which fails to
satisfy due process. If a defendant understands the charges against him,
understands the consequences of a guilty plea, and voluntarily chooses to
plead guilty, without being coerced to do so, the guilty plea ... will be
upheld on federal review.'" *Id.* (quoting *Frank,* 646 F.2d at 882). A plea
may not be induced because of actual or threatened physical harm or by

14

mental coercion overbearing the will of the defendant. *Brady v. U.S.,* 397 U.S. 742, 750 (1970). A plea of guilty will not be set aside where the plea was intelligently made, on advice of competent counsel, even if the defendant was motivated in part to plead guilty for a lesser sentence. *Id.* at 755-58 (A plea of guilty is not invalid merely because it was entered to avoid the possibility of a death penalty.)

In the present case, the evidence in the record indicates that the trial court judge's remarks, on their face and in light of the surrounding environment in which they occurred, were not inherently coercive or prejudicial to petitioner's rights. The judge's comments appeared to repeatedly inform petitioner of the possible consequences of proceeding with a full trial. *See Caudill v. Jago,* 747 F. 2d 1046, 1050-51 (6th Cir. 1984). There is no evidence which demonstrates that the trial court judge's remarks, other than being repeated, "were stern, overbearing or determined to intimidate" petitioner into pleading no-contest. *Id.* Petitioner failed to show that the state court's decision that his plea was voluntarily and knowingly made was not a reasonable application of the law.

Finally, to the extent that petitioner argues that Mich. Ct. R. 6.310 or any other provision of the Michigan Court Rules permitted him to withdraw

15

his plea, he would not be entitled to habeas relief because this is a state law claim non-cognizable on habeas review. *See Phipps v. Romanowski,* 566 F. Supp. 2d 638, 647 (E.D. Mich. 2008).  Petitioner is not entitled to relief on his first and second claims.

### B.  Claim # 3.  The ineffective assistance of counsel claims.

Petitioner claims he was denied the effective assistance of counsel at the trial and appellate level.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the

16

defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner first contends that trial counsel was ineffective for coercing him into pleading no-contest, instead of taking the case to trial.

The Supreme Court has noted that:

Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A

17

risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore,* 562 U.S. 115, 124-25 (2011).

The Supreme Court further admonished:

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture,". Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland.* The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains

18

that would benefit defendants, a result favorable to no one.

*Premo,* 562 U.S. at 125 (internal citations and quotations omitted).

In order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty or no-contest plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo,* 562 U.S. at 129 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty or no-contest. *See Maples v. Stegall,* 340 F.3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he would not have pleaded guilty or no-contest, because there would have been a reasonable chance that he would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156

19

F. Supp. 2d 815, 829 (E.D. Mich. 2001).  A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty no-contest, is therefore insufficient to prove such a claim. *Id.*  The test of whether a defendant would have not pleaded guilty or no-contest if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F.3d 368, 373 (6th Cir. 2012)(quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Finally, "[W]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining," a federal court is required to "use a "'doubly deferential'" standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013).

Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading no-contest. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 750.  Petitioner failed to put

20

forth any viable defenses that he had for the assault with intent to commit

murder charges or for the lesser charges in the two other cases that were

dismissed as part of the plea bargain.  Petitioner faced up to life in prison if

convicted of the assault with intent to commit murder charges.  Petitioner

was also charged with being a fourth felony habitual offender, which would

have raised the maximum penalty for at least some of the other 12

charges to life in prison.  Had petitioner been convicted of being a fourth

felony habitual offender, his sentencing guidelines on the minimum

sentence for the assault with intent to commit murder charges could have

been as high as 750 months or 62 ½ years. [3]  Petitioner had also

confessed to the crimes.  Petitioner's counsel negotiated a plea

agreement in which petitioner received no more than fourteen years, three

months on the minimum sentence.  Petitioner's counsel also obtained

dismissal of two other cases and the habitual offender charges.  Under the

circumstances, trial counsel's advice to plead no-contest to the assault

with intent to commit murder charges was a reasonable strategy. *See*

*Bonior v. Conerly,* 416 F. App'x. 475, 479 (6th Cir. 2010).

---

[3]   Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7; 666 N.W. 2d 231 (2003)(citing M.C.L.A 769.34(2)).  The maximum sentence is not determined by the trial judge but is set by law. See *People v. Claypool,* 470 Mich. 715, 730, n. 14; 684 N.W. 2d 278 (2004)(citing M.C.L.A. 769.8).

21

In addition, the favorable plea bargain that petitioner received weighs against a finding that counsel was ineffective for advising a no-contest plea. *See Plumaj v. Booker*, 629 F. App'x.662, 667 (6th Cir. 2015)(citing *Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 F. App'x. 517, 522 (6th Cir. 2012)).  Indeed, "the Supreme Court has never held that the benefits of a plea agreement alone cannot suffice to answer the prejudice inquiry, namely whether 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. at 59). Other courts have reached the same result. *See Pidgeon v. Smith*, 785 F.3d 1165, 1173 (7th Cir. 2015)("The terms of a plea deal are admittedly relevant in assessing the credibility of a petitioner's claim that he would have gone to trial had he received correct information at the plea bargaining stage").  In light of the favorable plea bargain received in this case, petitioner is unable to show that he was prejudiced by counsel's advise to plead no-contest.  Finally, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim, because any suggestion that he has a defense to these charges is "unpersuasive and lack merit." *Holtgrieve v. Curtis,* 174 F. Supp. 2d 572, 587 (E.D. Mich.

22

2001).

Petitioner next contends that his sentencing counsel and his appellate counsel were ineffective for failing to argue that he was entitled to withdraw his plea pursuant to M.C.R. 6.310(A) because the judge never accepted it. Instead, counsel moved to withdraw the plea on other grounds, primarily that petitioner had been coerced into pleading no-contest.

A review of the record establishes that the trial judge accepted petitioner's no-contest plea. (Tr. 7/25/11, pp. 22-31). The judge, in fact, advised petitioner at the time of the plea that he would not be permitted later on to withdraw it. (*Id.*, p. 31). The judge on post-conviction review later rejected petitioner's ineffective assistance of counsel claim, concluding that he was not entitled to withdraw his plea under M.C.R. 6.310(A) because it had been accepted. *People v. Marshall,* No. 11-002149-01-FC, * 3 (Third Cir. Ct., July 31, 2014).

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the state trial court

23

sitting on post-conviction review determined that petitioner was not entitled under M.C.R. 6.310(A) to withdraw his plea, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003).  Petitioner has failed to show any reasonable likelihood that any motion to withdraw his no-contest plea under M.C.R. 6.310(A) would have been granted. Petitioner was not prejudiced by his sentencing or appellate counsel's failure to move to withdraw his plea on this basis. *See e.g. Franks v. Lindamood,* 401 F. App'x. 1, 7 (6th Cir. 2010).  Petitioner is not entitled to relief on his third claim.

### C. Claim # 4.  The post-conviction relief claim.

Petitioner claims that the trial court and the Michigan Court of Appeals erred in applying M.C.R. 6.508(D)(3) to reject his ineffective assistance of appellate counsel claim.

Petitioner is correct that he could not have procedurally defaulted his ineffective assistance of appellate counsel claim because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).

24

However, "[t]he Sixth Circuit consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007). A federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F. 3d 663, 681 (6th Cir. 2001). The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Petitioner is not entitled to relief on his fourth claim.

## IV. Conclusion

For the reasons discussed, the petition for writ of habeas corpus is denied.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court

25

rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.  Petitioner may, however, proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that the petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

26

s/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: October 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2016, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager